THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YADIRA I. FORNIEL | CIVIL ACTION |
| v. | |
| TROOPER PETER G. HAMATI-ATTIEH, *et al.* | No. 25-0117 |

Henry, J.                                                                                             January 20, 2026

**MEMORANDUM**

A driver alleged that she was violently ripped from her car for no good reason by a state trooper and pepper-sprayed in the face, dangerously close to her eyes. She sued not only the trooper who sprayed her but also Pennsylvania State Police (PSP) leadership, alleging that the commissioner and his predecessor effectively allowed an assault like this to proceed. The commissioners and the troopers moved to partially dismiss the complaint. Because I agree with the commissioners that the complaint relies on conclusory language in assigning them supervisory liability, I dismiss those counts without prejudice, granting leave to amend should the plaintiff believe it fruitful. Because I agree with the driver that state troopers are not protected from suit under state law by state sovereign immunity at this stage, I deny the motion as to those counts.

I.   **BACKGROUND**[2]

Yadira I. Forniel was driving just after midnight on U.S. Route 22 when she observed cars ahead of her merging toward the right. She was driving at the speed limit in the middle lane, which she saw was blocked ahead due to an apparent traffic accident. She was unable to merge rightward,

---

[2] At this level, I accept the factual content of the complaint as true. *See infra* § II.

1

however, because of traffic already in that lane. Eventually, she came to a complete stop to avoid the accident scene. Pennsylvania State Police (PSP) Troopers Hamati-Attieh and Limoli were on scene as part of the response to the accident. As Forniel neared the scene, Hamati-Attieh flashed his flashlight at her. She could not see Hamati-Attieh prior to that alert, since he was wearing a dark uniform and no high visibility clothing. Receiving no communication beyond the alert, Forniel waited until she had the opportunity to safely merge into the open lane and then continued driving down the highway.

Shortly after Forniel passed the accident scene, Hamati-Attieh got into a police vehicle and pursued her using emergency lights and sirens. Forniel pulled over immediately, at which time Hamati-Attieh approached her vehicle on foot and began yelling profanely at her to get out. Forniel did not understand the reason for being pulled over.[3] Hamati-Attieh grabbed her door handle and attempted to remove her forcibly from the car by her hair. Forniel placed both hands on her steering wheel. Quickly and without warning, Hamati-Attieh fired a chemical pepper spray into Forniel's face and eyes. The trooper was allegedly aware of a "Hydraulic Needle Effect" that can be caused by his pepper spray at close quarters, which causes tissue damage to a sprayed subject's eyeballs. He nevertheless deployed his pepper spray within that effect's three-foot radius, then forcibly removed her from the car. Hamati-Attieh threw Forniel onto the hood of his car and put her in handcuffs.

Hamati-Attieh took Forniel into custody and swore out a criminal complaint against her for resisting arrest, reckless endangerment, careless driving, reckless driving, passing closely to an emergency response, disorderly conduct, and disregarding traffic lane. She was unable to post bail

---

[3] Forniel's description of the initial encounter does not discuss whether she attempted to or did comply with the Trooper's orders, but it does allege that the entire encounter from Hamati-Attieh's stopping his vehicle to pepper spraying Forniel lasted "17 seconds." Compl. ¶ 48.

until the following day, March 12, 2023, after about 20 hours in custody. During her time in jail,

she learned that her brother had passed away. She was unable immediately to grieve with family.

Forniel was acquitted of all charges at trial.[4] She alleges in her complaint, filed January 8,

2025, that she suffered physical and mental pain and suffering and deprivations of her constitu-

tional rights, among other harms. She includes counts against Hamati-Attieh as well as Trooper

Limoli, who was nearby during the incident but made no effort to intervene to stop Hamati-Attieh

and whom she accuses of joining a civil conspiracy with Hamati-Attieh; and against Former Penn-

sylvania State Police Commissioner Colonel Robert Evanchick and Commissioner Colonel Chris-

topher Paris and other unknown supervisors.

On April 7, 2025, the defendants brought the present motion to dismiss several of the

counts. First, the commissioners moved to dismiss the supervisory liability and "*Monell*-like"

claims in counts VII and VIII. Next, all of the named defendants moved to dismiss the state law

claims in count X because there is no private right of action under the state constitution. The

trooper defendants also moved to dismiss the claims in counts IX and XI, based mainly on Penn-

sylvania statutory sovereign immunity, alleging want of jurisdiction. In her brief in opposition

(BIO), Forniel conceded that count X should be dismissed. *See* Proposed Order, ECF 8-2.

## II.  FRAMEWORK

To survive a motion to dismiss under Rule 12(b)(6), a complaint must set forth facts that

raise a plausible inference that the defendant inflicted a legally cognizable harm upon the plaintiff.

*See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "[S]tating . . . a claim requires a complaint with

enough factual matter (taken as true) to suggest the required element. This does not impose a

---

[4] A jury acquitted her of the criminal offenses. The trial court acquitted her of the summary of-
fenses. *See* Pa. R. Crim. P. 622(B).

probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quotation marks and citations omitted). The rule "does not permit dismissal of a well-pleaded complaint simply because it strikes a savvy judge that actual proof of those facts is improbable." *Id.* (quotation marks omitted).[5] It requires, more, however, than reciting "mere elements of a cause of action; instead, a complaint must allege facts suggestive of the proscribed conduct." *Id.*

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction is evaluated under a different standard. When a defendant challenges subject matter jurisdiction, the Court must make an "actual determination," as to whether that jurisdiction exists before turning to the merits. *Tagayun v. Stolzenberg*, 239 F. App'x 708, 710 (3d Cir. 2007). Where, as here, defendants move

---

[5] Forniel recommends as "[p]erhaps the best expressed statement of the role to be played by this Court," BIO 18, a lengthy quote from the principal dissent in *Iqbal*, in which Justice Souter writes that allegations at this stage must be taken as true unless they are "sufficiently fantastic to defy reality as we know it: claims about the little green men, or the plaintiff's trip to Pluto, or experiences in time travel." 556 U.S. at 696 (joined by three other justices).

I would, of course, disregard an allegation that little green men were making improper policy on Pluto. But an allegation that PSP commissioners were making improper policy in Pennsylvania is very different. The allegations in a complaint must be factually substantive, "showing" factual matter sufficient to infer "more than the mere possibility" of the legal conclusion. Fed. R. Civ. P. 8(a)(2); *Iqbal*, 556 U.S. at 679. In the *Iqbal* dissent on which Forniel relies, Justice Souter discusses his understanding that the majority's holding was concerned not with plausibility but with whether the complaint does make substantive assertions. *Id.* at 696. He argues that Iqbal's allegations that the Attorney General and other officers directly "helped to create the discriminatory policy" of detaining Muslim New Yorkers after the September 11 attacks were not mere conclusions. *Id.* at 697–98 (basing this on consideration of other allegations that he read the majority to hold irrelevant to the analysis); *id* at 698 ("The fallacy of the majority's position, however, lies in looking at the relevant assertions in isolation.").

In short, Justice Souter believed there was sufficient factual substance to rise above the level of bald assertions in the case before him. In focusing on Justice Souter's aside regarding the presumption of factual allegations truthfulness, Forniel's forceful summation mistakes the heft of *Iqbal* and its principal dissent, which is about whether allegations have factual content or are mere conclusions. As I attempt to show, the same mistake applies in the present motion.

to dismiss for lack of subject matter jurisdiction on facial grounds, *i.e.*, contesting the sufficiency of the pleadings, the Court considers only the complaint and documents referenced therein and attached thereto, and in the light most favorable to the plaintiff. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (quotation marks omitted). "In the mine run of cases, jurisdiction will involve no arduous inquiry and both judicial economy and the consideration ordinarily accorded the plaintiff's choice of forum should impel the federal court to dispose of those issues first." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007) (cleaned up). "A claim may be dismissed under Rule 12(b)(1) only if it clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000) (quotation marks omitted), *unrelated holding modified by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003). Where the "merits and jurisdiction are closely related, a court may determine subject matter jurisdiction without reaching the merits, so long as the court demands less in the way of jurisdictional proof than would be appropriate at the trial stage." *Id.* (cleaned up).

## III. DISCUSSION

I will follow the defendants' memorandum ("mem.") in grouping and reviewing the commissioners' arguments followed by the trooper's

### A. Supervisory Liability, Policymaker Liability, and Failure to Train (Counts VII, VIII)

Forniel sues Evanchick and Paris (as well as other unnamed PSP supervisors) under theories of deficient supervision and policymaking (count VII) and failure to properly train (count VIII). She cites 42 U.S.C. § 1983, a statute that creates a cause of action for plaintiffs whose rights were deprived by any "person" acting under color of law. In addition to the theory of supervisory

5

liability, Evanchick and Paris characterize these claims as coming under, or approximating, *Monell v. New York City Dep't of Social Serv.*, 436 U.S. 658, 694 (1978), a landmark decision in which the Supreme Court permitted plaintiffs to sue municipalities as "persons" under Section 1983. *Monell* overturned previous precedent that had held that neither municipalities nor states were "persons," but left unclear whether a state agency or its officials might also be "persons." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 62 (1989) (characterizing since *Monroe v. Pape*, 365 U.S. 167 (1961)).

The Supreme Court has clarified that neither a state agency nor an official of that state agency sued in her official capacity is a "person" under Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* When a state official is sued in her official capacity, the suit is substantively "against the official's office" and "no different from a suit against the State itself." *Id.* at 71.

Forniel, however, indicates that the PSP defendants are sued only in their individual capacities for the purposes of her claims under § 1983. Compl. ¶ 19 (noting that the supervisors are not sued in their official capacities because that would be barred by Eleventh Amendment immunity). Determining whether a defendant is sued in her individual capacity is not a matter of deciding the scope of her official capacity. *Hafer v. Melo*, 502 U.S. 21, 26 (1991). "[T]he phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is *sued*, not the capacity in which the officer inflicts the alleged injury." *Id.* (emphasis added). The Third Circuit has relied on the complaint, and particularly the nature of the prayers for relief, to characterize whether a defendant is sued individually. *Gregory v. Chehi*, 843 F.2d 111, 119–20 (3d

Cir. 1988). Here, the complaint intends to target these supervisors themselves, given both Forniel's explicit language, ¶ 19, and her request for punitive damages, ¶¶ 170, 180. *Gregory*, 843 F.2d at 119–20.[6]

The question is whether the complaint adequately pleads facts showing that the supervisory defendants were each themselves liable as individuals. Higher-ups may not be sued for vicarious liability or under a theory of *respondeat superior*. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 289 (3d Cir. 2018). They are liable only insofar as they are alleged to have been personally involved in wrongful conduct or a wrongful omission. *Iqbal*, 556 U.S. at 676 (requiring a plaintiff to "plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution" (emphasis added)).

The complaint, motion, and response brief juggle related and overlapping theories of supervisory liability, failure to train, and what the motion refers to as *Monell*-like liability. The Third Circuit has confirmed that "the standard for personal liability under section 1983 is the same as that for municipal liability." *Carter v. City of Philadelphia*, 181 F.3d 339, 356 (3d Cir. 1999) (relating the supervisory liability analysis in *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989) to *Monell*). As to the "*Monell*-like" claims regarding policy and failures to adequately train, this Court has noted recently enough that the question of whether a state official may be sued individually under *Monell* is "an unsettled question in the Third Circuit." *Quinn-Winne v. Pennsylvania*, No. CV 20-2493, 2022 WL 767828, at *2 (E.D. Pa. Mar. 14, 2022) (Baylson, J.). Regardless, given that the standards are identical and the relevant allegations are essentially identical, and given that

---

[6] Whether Forniel's additional prayer for injunctive relief should somehow change this analysis is, at any rate, not taken up by the defendants.

I grant the motion as to these counts, I will not distinguish between the analyses. Whether *Monell*-like liability may attach to a state official sued individually need not be settled for now.

Supervisory liability may attach only if the supervisor personally "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in a subordinate's unconstitutional conduct. *A.M.* ex rel. *J.M.K. v. Luzerne Cnty. Juv. Det. Ctr*, 372 F.3d 572, 586 (3d Cir. 2004). Forniel does not claim that any defendant other than Limoli was present with Hamati-Attieh at the time of the pepper spray. There is no suggestion that the events surrounding Forniel's arrest were actively directed in any way by any of the other defendants. She claims instead that Paris and Evanchick are liable, even from atop the PSP by dint of their supervisory practices or procedures, or the lack thereof. Under the Third Circuit's test from *Brown v. Muhlenberg Twp.*, to show supervisory liability for such disregard, a complaint must

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury (3) the supervisor was aware that the unreasonable risk existed (4) the supervisor was indifferent to the risk; and (5) the underlying violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

269 F.3d 205, 216 (3d Cir. 2001).[7]

Relying on the *Monell* line of case law, Evanchick and Paris argue that supervisory liability requires that a plaintiff show that either 1) the supervisor had *contemporaneous* knowledge of the subordinate's offending incident or 2) the supervisor knew of a pattern of similar incidents, alongside "circumstances under which the supervisor's actions or inaction could have been found to

---

[7] Forniel also offers a formulation from *Kis v. County of Schuylkill*, 866 F.Supp 1462, 1474 (E.D. Pa. 1994), which she characterizes as less demanding than the test from *Brown*. BIO 11. Given that *Brown* is more recent Third Circuit published authority, to the extent that there is a substantive difference in the tests, I am bound to follow it.

have communicated a message of approval to the offending subordinate." *Montgomery v. Simone*, 159 F.3d 120, 127 (3d Cir. 1998). The supervisory defendants relate this to the theory of "knowledge and acquiescence," a term mentioned once in the complaint, ¶ 163. How, they ask, can they have had knowledge of or acquiesced to behavior by troopers they probably never knew against a woman they never heard of? How, Evanchick asks, could he have had knowledge and acquiesced to an incident that occurred months after his retirement?

Finally, Evanchick and Paris object to the nature of the pleadings, which they argue are conclusory, redundant, and "painted[] with broad if not expressionistic strokes." Mem. 1. They characterize the complaint as purporting a "history of widespread abuse" of which the commissioners "somehow were on notice" without specific factual allegations. *Id.* (internal quotation marks omitted). They argue that the complaint fails to allege even that they had "direct supervisory authority over the subordinate" in question. *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293–94 (3d Cir. 1997).

First, the motion's arguments related to timing and chain of command are unpersuasive. As a review of the case law shows, a supervisory liability case may be made out where the plaintiff can show "knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998). The supervisory defendants' objections that Forniel does not allege concurrent knowledge are based on a theory of concurrent supervisory liability irrelevant to her claims, which rely on a theory of having caused the final incident through a longstanding run-up of managerial wrongdoing. Similarly, I deny Evanchick's argument that he could not have had what he refers to as "knowledge and acquiescence of conduct which the plaintiff admits occurred two months after his retirement"

because that "defies logic." Mem. 8 (cleaned up). If Evanchick was deliberately indifferent as a

supervisor under *Brown* and caused Forniel's injuries, the fact that he retired two months prior to

the incident is of uncertain factual relevance; just as a factfinder might find that two months was

sufficient time to attenuate Evanchick's actions and inactions, another might find that Evanchick's

supervision set in motion the alleged practices and customs with such momentum that even his

successor's diligent efforts could not in two months undo them.[8] Finally, Forniel need not allege

facts in support of the commissioners having "direct supervisory authority" at this stage; the de-

fendants having failed to provide any legal argument to suggest that the commissioners did *not*

direct policy, that much seems to me a reasonable inference for an agency of this size. *See Hall v.*

*Phelps*, No. 22-CV-480, 2024 WL 1052894, at *5 (M.D. Pa. Mar. 11, 2024) (reading complaint

that "specifically alleged that the PSP Commissioner occupied a position of responsibility" as suf-

ficiently alleging as much).

The substance of Forniel's response is to quote at length a demonstration that she has "pre-

cisely pled each of the above required elements [from *Brown*] in numerous places throughout her

54 page Complaint." BIO 11. For instance, Forniel begins with the following quote from ¶ 165,

which she describes as identifying for *Brown*'s first element through "9 discrete supervisory prac-

tices or procedures which were lacking," *id.*:

> The specific lacking supervisory practices or procedures (or pol-
> icies), which Defendants Evanchick, Paris, and John/Jane Doe Su-
> pervisors were required at a minimum to promulgate, implement,
> monitor and, if necessary, modify, include, inter alia, the following:
> [1] a heightened supervisory sensitivity and vigilance for uncover-
> ing and eradicating Constitutional violations and Constitutional vi-
> olators; [2] procedures whereby members of the public who have
> experienced Constitutional police violations are encouraged to ac-
> cess a simple, convenient, non-retaliatory, and responsive procedure

---

[8] Evanchick offers no authority to show that his retirement legally, rather than factually, alters his amenability to suit.

to register their complaints and receive prompt, objective responses; [3] procedures carefully cataloging complaints (legal, formal and informal) and their respective outcomes – by name of both Troopers and complainant, the nature of the claim, and resolution and corrective action if any; [3] procedures for the efficient, effective, objective and independent investigation of all claims and complaints, for their analysis, and requiring the prompt and open imposition of disciplinary, corrective action or policy or procedural change; [4] procedures for promptly responding to those who registered complaints and for securing feedback concerning the resolution reached (necessary to restore good community relations and to encourage the belief that their complaints will not be ignored); [5] procedures requiring remedial training in Fourth Amendment safeguards including the use of force limitations; [6] procedures requiring training and remedial retraining in the Fourteenth Amendment safeguards and, especially the essential need for accurate, objective and comprehensive Complaint, report and Affidavit writing; [7] practices and procedures for Trooper conduct which places the focus of the truth-seeking process and on eliminating police misconduct rather than protecting it from prosecution, punishment or discipline; [8] procedures for the complete statistical analysis of police complaints from whatever source, I.A. outcomes, use of force incidents, the race/ethnicity of complainants and of use of force victims, criminal charges filed, prosecutions pursued and criminal convictions secured, etc.; [9] procedures which permit the prompt identification and retrieval of all complaints, outcomes, and evidence, (including videos) on an individual Trooper basis; etc.

Compl. ¶ 165 (bracketed numbering added). As to *Brown*'s second element of showing causation, *i.e.*, that "the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury," Forniel offers the following paragraph, ¶ 166: "The existing customs within the PSP created an unreasonable risk of injury to citizens such as Plaintiff, in the absence of the above-specified supervisory practices." BIO 12–13.

These two very different paragraphs characterize parts of the complaint that are conclusory through manifold alternatives or through summary recitation. Paragraph 166 takes the more straightforward approach: It reproduces the text of the element it hopes to fulfill without providing

any factual content by which that element could be "show[n]" under Fed. R. Civ. P. 8(a)(2).[9] Paragraph 165 takes the more circuitous route. It instead offers nine potential "practices or procedures (or policies)" which Evanchick and Paris were supposed to "promulgate, implement, monitor and, if necessary, modify." Yet, it again fails to provide any factual assertion to "show[]" under Rule 8(a) that these were lacking. Proving a negative can be a difficult undertaking, but all that is needed at this point is some foothold, a fact from which the inference that these policies were lacking could spring.[10] For instance, to raise the inference that no policy or procedures existed "[2] whereby members of the public who have experienced Constitutional police violations are encouraged to access a simple, convenient, non-retaliatory, and responsive procedure to register their complaints and receive prompt, objective responses," ¶ 165, Forniel might suggest that *she* was not so encouraged. That fact might be enough to raise the inference that the "practices or procedures (or policies)" to encourage her were lacking—at which point we could get to the Rule

---

[9] Forniel's forceful assurance that "[a] more exacting adherence to the Third Circuit's requirements for properly pleading supervisory liability is hard to imagine," BIO 14, calls for an imaginative suggestion. Knowing nothing of the true facts, suppose Forniel had access to information from state report, a prior deposition, or transcripts from her own criminal case in which troopers discussed the lack of guidance that they received on one of these topics and admitted that it was relevant to their conduct. Merely pleading that information would provide factual content relevant to the elements lacking here under binding Third Circuit law. It is not so hard to imagine.

[10] Notably, Forniel alleges the text of several written PSP policies in ¶¶ 32 and 72, including policies on reasonable force and so-called "less-lethal" weapons and even safety vests. This gets to a possible inconsistency: Whereas she accuses the troopers of violating PSP policies, ¶ 72, and acting outside the scope of their duties, ¶ 20, she also accuses the troopers' supervisors of setting customs and policies that were themselves the source of the violations, *e.g.*, ¶ 165. At this stage, it is unnecessary to tease out whether there is a contradiction. Forniel is entitled to plead alternative claims, even inconsistent ones, from the same set of facts. Fed. R. Civ. P. 8(d).

12(b)(6) stage and argue about whether lacking such a policy could plausibly have created an unreasonable risk of the ultimate injury.[11]

Reviewing the complaint in full, I do not find factual content sufficient to support an inference that any of the nine "specific . . . supervisory practices or procedures (or policies)," ¶ 165, were lacking. Paragraph 165 is therefore less conclusory than paragraph 166, since it is not only a recital of legal theories, but it recites theories that might themselves be insufficient even if proven.[12] Under *Iqbal*, the first two elements of a supervisory liability claim under *Brown* are insufficiently presented.[13] I therefore dismiss these counts, granting leave for Forniel to amend if she believes further factual development to salvage these theories is possible.

**B.  State Law: Sovereign Immunity and Jurisdiction (Counts IX, XI)**

Next, the trooper defendants move to dismiss state law claims of assault and battery against Hamati-Attieh (Count IX) and civil conspiracy against both Hamati-Attieh and Limoli (Count XI)

---

[11] Given that I find there was no factual content pleaded as to the claim that these policies did not exist, I do not reach the question of whether these lacking policies form part of a plausible supervisory liability claim.

[12] I have no need, and no basis from the arguments, to decide here whether, for instance, the lacking "heightened sensitivity" in the first proposed lacking policy, if proven, could attach to the other elements of a successful supervisory liability claim. I note that the eight proposed lacking policy, the failure of "complete statistical analysis of police complaints," is somewhat undercut by the allegation that defendants "were aware that the risks existed because they maintained statistics ostensibly to lower such risks." ¶ 167.

[13] As to the remaining elements of supervisory liability, I suspect that factual matter that raises the inference of the first two elements would likely raise an inference of the remaining three, but it is hard to know without seeing it. For instance, if Forniel had information that the supervisors had previously been sued for lack of an independent investigation mechanism and then even deposed about that issue but that no independent investigation had followed Forniel's own alleged assault, that would clearly prove their awareness, and it might raise the inference that they were indifferent to the risk and that their indifference was causally related to Forniel's own injury. *See Hall v. Phelps*, No. 22-CV-480, 2024 WL 1052894, at *5 (M.D. Pa. Mar. 11, 2024) ("Such investigations should have put Evanchick on notice of PSP troopers potentially unconstitutional use of excessive and deadly force . . .").

based on state law sovereign immunity.[14] Pennsylvania law protects "the Commonwealth, and its

officials and employees acting within the scope of their duties" from suit except where the legis-

lature "shall specifically waive the immunity." 1 Pa. C.S. § 2310. Defendants claim that no such

waiver applies here, and Forniel makes no argument to the contrary. Instead, she argues that the

defendants were not "acting within the scope of their duties" given their "outrageous conduct."

BIO 14–17.[15]

Immunity in general is "more than just a shield against damages but, instead, . . . protec-

tion[] against suit in the first place." *Hommrich v. Boscola*, 329 A.3d 775, 784 (Pa. Commw. 2025);

*accord Brooks v. Ewing Cole, Inc.*, 259 A.3d 359, 373 (Pa. 2021). The defendants therefore make

their motion under Rule 12(b)(1) for lack of subject matter jurisdiction rather than (and not in

addition to) under Rule 12(b)(6). Defs' Mot. to Dismiss, ECF 7 at 2 (ECF pagination). There is

generally a meaningful difference between review under Rules 12(b)(1) and 12(b)(6), as the recited

frameworks above indicate. The former requires a determination by the Court of its jurisdiction

but must *not* reach the merits of the suit, whereas the latter tests whether the factual matter of the

allegations is sufficient to raise reasonable inferences of its legal conclusions, aided by an

---

[14] All of the answering defendants also move to dismiss Count X, a state constitutional claim for injunctive relief, including for lack of subject matter jurisdiction. Since Forniel "agrees to a dismissal" of Count X, BIO 17, I grant the motion as to that count and dismiss it as conceded without further analysis.

[15] There is obviously tension between Forniel's claims under § 1983 and her arguments against sovereign immunity: Whereas the former require that the defendants *were* acting within the scope of their duties for the claims to proceed, the same would preclude the troopers' liability under the state's official immunity. Again, Forniel is not bound to logical consistency by law at this level. Fed. R. Civ. P. 8(d); *see supra* note 10. Whether she is entitled to plead inconsistent facts, and whether the question of the troopers' actions were within the scope of their duties is factual or a mixed issue, are left for another time. *Compare Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) (pleading rules "do not tolerate factual inconsistencies in a complaint") *with Collins v. Dep't of the Treasury*, 83 F.4th 970, 983 n.14 (5th Cir. 2023) (allowing plaintiff to plead "allegedly inconsistent factual allegations").

application of common sense. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408–09

(3d Cir. 1991). The Rule 12(b)(1) motion is made facially rather than factually, *i.e.*, it is based on

the face of the complaint itself rather than upon any additional factual material. Mem. 5; *see Gould*

*Elecs. Inc. v. United States*, 220 F.3d 169, 176 & n.6 (3d Cir. 2000), *unrelated holding modified by*

*Simon v. United States*, 341 F.3d 193 (3d Cir. 2003).

The question of whether a claim of sovereign immunity at the dismissal stage is properly

made by attacking subject matter jurisdiction under Rule 12(b)(1) or as a motion to dismiss for

failure to raise a claim under Rule 12(b)(6) is not settled in the Third Circuit, nor is it settled

nationwide. *Meyers v. Oneida Tribe of Indians of Wisconsin*, 836 F.3d 818, 822 & n.3 (7th Cir.

2016) (noting Seventh Circuit precedent that sovereign immunity is not jurisdictional but collect-

ing cases from other circuits to the contrary).[16] The Pennsylvania Supreme Court, however, has

referred to sovereign immunity as applied to a state trooper as an "affirmative defense" requiring

the plaintiff to "bear the burden of proof on that defense at trial." *Justice v. Lombardo*, 208 A.3d

1057, 1068 (Pa. 2019) (cleaned up).

Absent the claim of state law sovereign immunity, the Court's jurisdiction is not at issue.

There is no question that there is jurisdiction to address all of the other counts, which consider

federal questions and civil rights claims. *See* U.S.C. §§ 1331, 1343. Nor does the motion to dismiss

argue that this Court would otherwise be unable to consider the merits of the state law counts

---

[16] The extent of sovereign immunity *may* be jurisdictional, as it is with Federal Torts Claims Act cases. *See Gould Elecs. Inc.*, 220 F.3d at 174 n.2 (explaining use of "the word 'jurisdiction' not in the usual subject matter context, but rather to refer to the extent of the sovereign immun- ity waiver" under the FTCA). In the case of the FTCA, however, the reason the question is juris- dictional is that the jurisdiction conferred by the FTCA was generally the only source of jurisdic- tion. *Comm. of Pennsylvania, by Sheppard v. Nat'l Ass'n of Flood Insurers*, 520 F.2d 11, 24 (3d Cir. 1975) ("If jurisdiction is not established under the Act through compliance with its require- ments, jurisdiction cannot be established at all.") *overruled on other grounds*, 659 F.2d 306 (3d Cir. 1981).

against the troopers under federal supplemental jurisdiction. *See* 28 U.S.C. § 1367(a) (granting

supplemental jurisdiction over related state law claims); compl. ¶ 2 (claiming supplemental juris-

diction). Additionally, the defendants make their motion based on state law and explicitly leave

out of their sovereign immunity argument Eleventh Amendment immunity, which can bar juris-

diction otherwise provided. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01

(1984); *Mem.* 12 n.4. Regardless, as with the supervisor defendants, the complaint makes the par-

ties in interest the troopers themselves, rather than the Commonwealth. *Gregory*, 843 F.2d at 119–

20; *see Melo*, 502 U.S. at 26–27. Where the plaintiff seeks monetary damages but the party in

interest is merely a Commonwealth officer in her individual capacity, Eleventh Amendment im-

munity is not implicated. *Id.*[17]

Could the Court determine from the pleadings alone, and without proceeding to the level

of a Rule 12(b)(6) merits determination, that Forniel cannot make it into court in the first place? If

the same motion were brought under Rule 12(b)(6), I could proceed to consider whether the facts

alleged support an inference that the troopers were acting outside the scope of their duties, there-

fore leaving them liable to the intentional torts of which they are accused.[18] However, the troopers

did not make that motion, and I typically decline to make Rule 12 motions on parties' behalf.[19]

---

[17] Although Pennsylvania law defines "Commonwealth party" to include employees acting within the scope of their duties for the purposes of that chapter, 42 Pa. C.S. § 8501, the term does not affect the nature of the suit.

[18] The asserted sovereign immunity is waived only in certain cases of negligence. Even if these claims fit into those categories, they do not count as negligence at all in Pennsylvania. Assault and battery (Count IX) are intentional torts, *Keenan v. City of Philadelphia*, 936 A.2d 566, 567–570 (Pa. Commw. 2007), as is civil conspiracy (Count XI), *Burnside v. Abbott Lab'ys*, 505 A.2d 973, 982 (Pa. Super. 1985). Negligence does not reach intentional torts in Pennsylvania. *Cadwallader v. New Amsterdam Casualty Co.*, 152 A.2d 484, 488–89 (Pa. 1959) (no recovery possible "on a claim of negligence when the suit was founded on the theory of intentional tort").

[19] It seems possible that the jurisdictional defense was made because of a separate jurisdictional issue that arises in state litigation, since a jurisdiction-stripping statute relates to this section. Under 42 Pa. C.S. § 761, the Commonwealth Court has original jurisdiction over suits against the

*Gould Elecs. Inc.*, 220 F.3d at 178–79 (approving of treating a motion under Rule 12(b)(1) as one under 12(b)(6) only after recalling that "[t]his Court has previously cautioned against treating" them the same).

As a facial jurisdictional challenge, the Court is left to consider the pleadings alone. *In re Schering Plough*, 678 F.3d at 243. Forniel's claims are in no way so "insubstantial and frivolous." that they could not get into this court under supplemental jurisdiction. *Gould Elecs. Inc. v. United States*, 220 F.3d at 178. Even if the Pennsylvania Supreme Court's reference to sovereign immunity for state employees as an affirmative defense were not controlling, the question of whether a trooper was acting within the scope of his employment during an incident, even one growing out of a valid traffic stop, is a "fact-intensive" inquiry for the jury. *Justice*, 208 A.3d at 1070 ("We decline to hold that wrestling Ms. Justice into handcuffs was, as a matter of law, 'incidental to' Trooper Lombardo's duty to enforce highway regulations warrantless arrests."). Forniel's complaint would find jurisdiction in the Court of Common Pleas had it been filed in state court, and therefore I will not dismiss it for want of supplemental jurisdiction here.

### C. Civil Conspiracy (Count VI)

The motion to dismiss mentions count VI momentarily in its introduction, mem. 1, but does not discuss its merits except in a short footnote, *id*. 2 n.2. I take this count's absence from the conclusion's prayer and from the proposed order to indicate more likely a waiver than a forfeiture.

---

Commonwealth *except* "actions or proceedings conducted pursuant to" the state sovereign immunity chapter. *See Balshy v. Rank*, 490 A.2d 415, 417–18, 420–21 (Pa. 1985) (holding that "actions against the individual state troopers are clearly not within the original jurisdiction *of the Commonwealth Court . . .* and *are properly commenced in the Court of Common Pleas*." (emphasis added)). Any allocation of original jurisdiction between different state courts is of no moment to this Court's original jurisdiction.

To the extent that the defendants could be read to move to dismiss count VI, their motion gives essentially no argument and is therefore denied with prejudice. *See Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021) (movant bears burden of persuasion).

## IV.   **CONCLUSION**

For the reasons given above, I will issue an order granting the motion in part and denying it in part for the above-stated reasons. Although Forniel's brief could not be construed as a motion for leave to amend the complaint, in light of the possibility of her reviving the claims dismissed without prejudice, the Court will permit her the opportunity to do so on its own motion.