THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **YADIRA I. FORNIEL**<br><br>**v.**<br><br>**TROOPER PETER G. HAMATI-ATTIEH, *et al.*** | **CIVIL ACTION**<br><br>**No. 25-0117** |

**Henry, J.** **September 1, 2026**

**MEMORANDUM**

A driver alleged that she was violently ripped from her car for no good reason by a state trooper and pepper-sprayed in the face, dangerously close to her eyes. She sued not only the trooper who sprayed her but also Pennsylvania State Police (PSP) leadership, alleging that the commissioner and his predecessor effectively allowed an assault like this to proceed. The commissioners and the troopers moved to partially dismiss the complaint, a motion I previously granted in part and denied in part. Forniel has since amended her complaint, and I here review a motion to dismiss counts VII to X of the second amended complaint.

## I. Background[1]

Yadira I. Forniel was driving just after midnight on U.S. Route 22 when she observed cars ahead of her merging toward the right. She was driving at the speed limit in the middle lane, but

---

[1] At this level, I accept the factual content of the amended complaint as true. *See infra* § II. Where I refer to "the complaint," I mean the operative complaint, *i.e.*, the second amended complaint (ECF 17).

The operative complaint was filed about an hour and a half after a very slightly different amended complaint was filed (ECF 16). The modifications between that first amendment and the second are minimal. As far as I can tell, they are no more than the deletion of the state constitutional violations count that had been Count X and then the characterization of the new filing as a *second* amended complaint. The deleted count had been dismissed by agreement after Forniel's concession.

she saw that her lane was blocked ahead due to an apparent traffic accident. She was unable to merge rightward, however, because of traffic already in that lane. Eventually, she came to a complete stop to avoid the accident scene. Pennsylvania State Police (PSP) Troopers Hamati-Attieh and Limoli were on scene as part of the response to the accident. As Forniel neared the scene, Hamati-Attieh flashed his flashlight at her. She could not see Hamati-Attieh prior to that alert, since he was wearing a dark uniform and no high visibility clothing. Receiving no communication beyond the alert, Forniel waited until she had the opportunity to safely merge into the open lane and then continued driving down the highway.

Shortly after Forniel passed the accident scene, Hamati-Attieh got into a police vehicle and pursued her using emergency lights and sirens. Forniel pulled over immediately, at which time Hamati-Attieh approached her vehicle on foot and began yelling profanely at her to get out. Forniel did not understand the reason for being pulled over.[2] Hamati-Attieh grabbed her door handle and attempted to remove her forcibly from the car by her hair. Forniel placed both hands on her steering wheel. Quickly and without warning, Hamati-Attieh fired a chemical pepper spray into Forniel's face and eyes. The trooper was allegedly aware of a "Hydraulic Needle Effect" of pepper spray used at close quarters that can cause tissue damage to a sprayed subject's eyeballs. He nevertheless deployed his pepper spray within that effect's three-foot radius, then forcibly removed her from the car. Hamati-Attieh threw Forniel onto the hood of his car and put her in handcuffs.

Hamati-Attieh took Forniel into custody and swore out a criminal complaint against her for resisting arrest, reckless endangerment, careless driving, reckless driving, passing closely to an

---

This background section repeats nearly all facts recited in my order on the previous motion to dismiss, with changes to discuss the amendments in the (operative) complaint.

[2] Forniel's description of the initial encounter does not discuss whether she attempted to or did comply with the Trooper's orders, but it does allege that the entire encounter from Hamati-Attieh's stopping his vehicle to pepper spraying Forniel lasted "17 seconds." Compl. ¶ 48.

emergency response, disorderly conduct, and disregarding traffic lane. She was unable to post bail until the following day, March 12, 2023, after about 20 hours in custody. During her time in jail, she learned that her brother had passed away. She was unable immediately to grieve with family.

Forniel was acquitted of all charges at trial. She alleges in her complaint, filed January 8, 2025, that she suffered physical and mental pain and suffering and deprivations of her constitutional rights, among other harms. She includes counts against Hamati-Attieh as well as Trooper Limoli, who was nearby during the incident but made no effort to intervene to stop Hamati-Attieh and whom she accuses of joining a civil conspiracy with Hamati-Attieh; and against Former Pennsylvania State Police Commissioner Colonel Robert Evanchick[3] and other unknown supervisors as supervisors and policymakers.

The defendants brought a motion to dismiss several counts, which I granted in part and denied in part. Dismissal order and memorandum of January 20, 2026 (ECF 10–11). Forniel amended the complaint, principally but not entirely through adding allegations relating to Evanchick's awareness of alleged policies or lapses that could have contributed to the harms Forniel alleges. The defendants now bring a motion to dismiss partially the amended complaint as to Commissioner Evanchick and newly numbered counts IX and X.

## II. **<u>Framework</u>**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must set forth facts that raise a plausible inference that the defendant inflicted a legally cognizable harm upon the plaintiff. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "[S]tating . . . a claim requires a complaint with

---

[3] The plaintiff spells Evanchick without the 'c,' but the defendant's materials include it. There is no suggested ambiguity as to the intended defendant, so I will adopt his spelling. The plaintiff also refers to Evanchick interchangeably with his former titles as Commissioner and as Colonel, but Evanchick generally refers to himself in briefing as a former Colonel. I adopt the Commissioner title here principally because it more obviously refers to his leadership role atop PSP.

enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quotation marks and citations omitted). The rule "does not permit dismissal of a well-pleaded complaint simply because it strikes a savvy judge that actual proof of those facts is improbable." *Id.* (quotation marks omitted). It requires, more, however, than reciting "mere elements of a cause of action; instead, a complaint must allege facts suggestive of the proscribed conduct." *Id.*

## III. Discussion

I follow the organization in the defendants' memorandum, proceeding from the putative liability of Commissioner Evanchick to the issues of state civil conspiracy and state sovereign immunity. Because I have already addressed the heft of the complaint through my decision on the first motion to dismiss, I focus here on whether the amendments in the operative complaint in any way modify my previous analysis.

### A. COMMISSIONER LIABILITY: SUPERVISORY LIABILITY, POLICYMAKER LIABILITY, AND FAILURE TO TRAIN (COUNTS VII & VIII)

Forniel sues Evanchick (and other unnamed PSP supervisors) under theories of deficient supervision and policymaking (count VII) and failure to properly train (count VIII). She cites 42 U.S.C. § 1983, a statute that creates a cause of action for plaintiffs whose rights were deprived by any "person" acting under color of law. Evanchick moves to dismiss because the complaint does not adequately allege his own personal involvement.

The question is whether the complaint adequately pleads facts showing that the supervisory defendants were each themselves liable as individuals. Higher-ups may not be sued for merely vicarious liability or under a theory of *respondeat superior*. *Jutrowski v. Twp. of Riverdale*, 904

F.3d 280, 289 (3d Cir. 2018). They are liable only insofar as they are alleged to have been personally involved in wrongful conduct or a wrongful omission. *Iqbal*, 556 U.S. at 676 (requiring a plaintiff to "plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution" (emphasis added)).

Supervisory liability may attach only if the supervisor personally "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in a subordinate's unconstitutional conduct. *A.M.* ex rel. *J.M.K. v. Luzerne Cnty. Juv. Det. Ctr*, 372 F.3d 572, 586 (3d Cir. 2004). Forniel does not claim that any defendant other than Limoli was present with Hamati-Attieh at the time of the pepper spray. There is no suggestion that the events surrounding Forniel's arrest were actively directed in any way by any of the other defendants. She claims instead that Evanchick is liable, even from atop the PSP, even shortly after his retirement from that position, by dint of his supervisory practices or procedures, or the lack thereof. Under the Third Circuit's test from *Brown v. Muhlenberg Twp.*, to show supervisory liability for such disregard, a complaint must

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury (3) the supervisor was aware that the unreasonable risk existed (4) the supervisor was indifferent to the risk; and (5) the underlying violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

269 F.3d 205, 216 (3d Cir. 2001).

Evanchick argues that supervisory liability requires that a plaintiff show that either 1) the supervisor had *contemporaneous* knowledge of the subordinate's offending incident or 2) the supervisor knew of a pattern of similar incidents, alongside "circumstances under which the supervisor's actions or inaction could have been found to have communicated a message of approval to the offending subordinate." *Montgomery v. Simone*, 159 F.3d 120, 127 (3d Cir. 1998). The

supervisory defendants relate this to the theory of "knowledge and acquiescence," a term mentioned once in the complaint, ¶ 178. How, they ask, can they have had knowledge of or acquiesced to behavior by troopers they probably never knew against a woman they never heard of? How, Evanchick asks, could he have had knowledge and acquiesced to an incident that occurred months after his retirement?

I previously dismissed the counts against Evanchick because I found insufficient factual content to support inferences that any necessary supervisory practices or policies were lacking, failing the first two elements of supervisory liability under *Brown*. In response to Forniel's argument that she had adhered to the pleading requirements as exactingly as was possible, I proposed a purely hypothetical scenario that would offer a more exacting adherence: One in which the troopers were known to have admitted outright the causal impact of deficient supervision on the alleged violation. Dismissal order (ECF 10) 12 n.9.

The complaint was then amended to contain new allegations relevant to Counts VII and VIII. These principally include the addition of information regarding two civil rights lawsuits predating the Forniel arrest in which Evanchick was a defendant and deponent. Compl. ¶¶ 150–66. In these two prior civil rights cases, Evanchick provided deposition testimony that in some aspects related not only to the cases at hand but also his supervision over PSP. In particular, the complaint alleges that Evanchick acknowledged that "as head of the PSP, he had little interest in these matters *or in seeing to it that proper training was given to his troopers in making decisions concerning the propriety of vehicle pursuits and maneuvers to stop vehicles*." *Id.* ¶ 154 (emphasis added). In context, "these matters" appears to relate to vehicle pursuits generally. *See id.* ¶ 152–54. The complaint goes on to allege Evanchick's admitted knowing non-participation in the review of each of the two civil rights cases. It also contains conclusions of two reports prepared by putative experts who

reviewed the depositions of Evanchick and others and described “a culture of disdain for oversight among the leadership.” *Id.* ¶ 163.

Considering the complaint anew, with the benefit of the amendments, I now believe the factual content to be narrowly sufficient to state a claim under *Brown*. Certainly the factual content is not as robust as imagined by my previous hypothetical—there is no direct, recorded admission of causation and overall liability—but that is not what is required at this level. Instead, I must look to whether the allegations are sufficient to “suggest the required element” and “raise a reasonable expectation that discovery will reveal evidence of the necessary element.” *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). The combined allegations, including Evanchick’s admitting in mid-2022 to his disinterest in ensuring proper training for his troopers, compl. ¶ 154, are enough to raise the reasonable expectation that Evanchick had still failed to make provisions by early 2023 for the training of his troopers on safe vehicle stops and that he was aware of the risks therein involved and remained perhaps explicitly indifferent. As to whether the risk of the violation Forniel alleges was related causally to the lacking procedures she lists in ¶ 180, I rely on my own common sense appreciation for the value of supervision on avoiding especially needless violence.[4] And it would not be unreasonable at this level to infer that Evanchick knew of a pattern of incidents and communicated his lack of interest in closer supervision or greater training to avoid them. *Montgomery v. Simone*, 159 F.3d 120, 127 (3d Cir. 1998).

[4] I previously criticized ¶ 180 (in its previous form in the original complaint at ¶ 165) as reciting different possible legal theories that might be insufficient legally even if sufficient factual matter were alleged. Although Evanchick discusses this paragraph in the present motion to dismiss, he argues only that the paragraph demonstrates “tension or inconsistency” without drawing any distinction between its several theories of lacking “practices or procedures (or policies).” These were winnowed by the amendment to shelve theories I had dismissed, but Evanchick does not offer any distinction between the legal merit of what theories remain.

Although I ultimately ruled in favor of Evanchick in my previous order, I did so having rejected some arguments that he raises again here nearly verbatim. In these issues, neither my reasoning nor my rulings have been disturbed by the amendments here. For instance, despite Evanchick's claim that he could not be liable for failing to train where the actual violation is alleged to have occurred shortly after his retirement, I ruled that it was neither legally nor factually certain that he could not be liable for the conduct of inferiors merely because the conduct came shortly after his retirement.[5] Additionally, I distinguished Evanchick's objections that Forniel does not allege concurrent knowledge as based on an irrelevant theory of concurrent supervisory liability, whereas Forniel's claims rely on a theory of his having caused the final incident through a longstanding run-up of managerial wrongdoing. Finally, despite Evanchick's argument that Forniel's theory is inconsistent, I explicitly ruled that these inconsistent theories are permissible at this stage under Fed. R. Civ. P. 8(d). Dismissal mem. 12 n.10; 14 n.15. Evanchick does not offer argument as to why these prior rulings should not continue to control, so I decline to reconsider them.

B. *MONELL* (COUNTS VII & VIII)

Evanchick characterizes the claims against him as coming under, or approximating, *Monell v. New York City Dep't of Social Serv.*, 436 U.S. 658, 694 (1978), in which the Supreme Court permitted plaintiffs to sue municipalities as "persons" under Section 1983. *Monell* overturned previous precedent that had held that neither municipalities nor states were "persons," but left unclear whether a state agency or its officials might also be "persons." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 62 (1989) (characterizing progression since *Monroe v. Pape*, 365 U.S. 167 (1961)). The Supreme Court clarified that a state is not a person under Section 1983. *Id.* at 64.

---

[5] Evanchick removed in this motion to dismiss a previous argument made without citation that "[a]t an absolute minimum, due to his January 2023 retirement, former Colonel Evanchick must be dismissed as a party to this action." *Compare* ECF 8 at 10 *with* ECF 21-2 at 13.

But there is no question about whether Commissioner Evanchick is a person. He is alleged to be "an adult individual." Compl. ¶ 7. He is not, and was not, a municipality. *See* 53 Pa. C.S. § 5602 (defining "municipality" for purposes of the Pennsylvania Municipal Authorities Act as "A county, city, town, borough, township or school district of the Commonwealth.") He is not and was not even a municipal actor in his role at the Pennsylvania State Police.

Whereas *Monell* held that municipalities can be treated like individuals, it is not so instructive about how individuals can be treated. Evanchick argues that Forniel cannot rely on *Canton v. Harris*, 489 U.S. 378, 388–89 (1989), in which the Supreme Court held that municipalities may be liable for their failures to train, because Evanchick is not a municipality. But *Canton* does nothing to limit suits on failure to train theory to only those against municipalities; it permits them against municipalities by analogy to suits against a person. *Id.* at 389–92. If an individual defendant otherwise amenable to Section 1983 liability allegedly caused harm by his failure to train subordinates, nothing requires the federal plaintiff to find a municipal actor instead. *But c.f.* Silver Jews, *People on* American Water (Vinyl Record, Drag City Oct. 20, 1998) ("A federal woman needs a municipal man.").

C. <u>STATE CIVIL CONSPIRACY (COUNT X)</u>

Forniel alleges one count of state civil conspiracy against the troopers at Count X. The allegations specific to Count X are unchanged (other than numbering) from their previous state as Count XI in the original complaint. The troopers' argument, however, is new: Under Pennsylvania law, "[a] single entity cannot conspire with itself and, similarly, agents of a single entity cannot conspire among themselves." *Grose v. Procter & Gamble Paper Prods.*, 866 A.2d 437, 441 (Pa. Super 2005). Evanchick argues that, as Hamati-Attieh and Limoli were both "troopers in the Pennsylvania State Police," they could not legally conspire among themselves. Forniel responds that

the argument is unavailable at this stage because the question requires an inquiry into whether the troopers really were acting as agents of a single entity. Forniel has the better argument, but I need not reach it, since I consider Evanchick's failure to argue this concern previously upon identical allegations to have forfeited the argument at this level. *Painadath v. Lattanzio*, No. CV 22-3604, 2024 WL 1836500, at *1 n.1 (E.D. Pa. Apr. 26, 2024) (denying motion in part because defendant advanced arguments in a second motion to dismiss that could have been made in the first motion but were not).

D. STATE SOVEREIGN IMMUNITY (COUNTS IX & X)

Finally, the troopers move to dismiss state law claims of assault and battery (Count IX, only trooper Attieh-Hamati) and civil conspiracy (Count X, both troopers together) under state immunity. These counts are functionally unchanged by the amendments, other than the latter's numbering. The troopers move to dismiss as a matter of jurisdiction, as they did in their previous motion. The argument in this motion is essentially unchanged as well, with only minor typographical and numbering changes.

As a preliminary matter, this argument asks me to revisit a ruling I have already squarely addressed, but without suggesting any change in fact or law to motivate a different outcome. The motion does not indicate it did so only to take care to preserve the issue, but neither did it contend with my prior ruling or its reasoning.[6]

[6] The present motion did quote the previous decision as having "observed in its Memorandum that motions to dismiss based on state law sovereign immunity are made 'under Rule 12(b)(1) for lack of subject matter jurisdiction rather than (and not in addition to) under Rule 12(b)(6).'" ECF 21-2 at 5 n.3. This misreads my reasoning, which explicitly denied the motion on its own stated grounds and declined to address it on alternative Rule 12(b)(6) grounds upon which it might have stood a chance. To the extent that I was at all unclear, I regret it.

Nor have the troopers changed their argument, despite language in my previous opinion offering guidance thereon. The troopers make their motion attacking subject matter jurisdiction rather than by asking the Court to determine that there is a claim upon which relief can be granted under Rule 12(b)(6). As I discussed in my prior opinion, a motion under Rule 12(b)(6) could have allowed me to "proceed to consider whether the facts alleged support an inference that the troopers were acting outside the scope of their duties, therefore leaving them liable to the intentional torts of which they are accused." Dismissal mem. 16. "However," I continued, "the troopers did not make that motion, and I typically decline to make Rule 12 motions on parties' behalf." *Id.*

The troopers still have not made that motion, and I decline to make it on their behalf.[7] The troopers' motion to dismiss for want of jurisdiction fails for the same reason it failed previously, and because it offers no grounds for my disturbing the prior ruling or suggesting the prior ruling does not control.

## IV. <u>Conclusion</u>

For the reasons given above, I will issue an order denying the motion to dismiss partially the second amended complaint. The discovery plan should be modified to accommodate the counts upon which I now rule, so I will order a joint status report and proposal to that effect.

[7] My previous opinion may have evinced some curiosity regarding a motion properly made under Rule 12(b)(6). Yet, as I ruled in the previous section on conspiracy, I may have rejected a new argument about old allegations as forfeited. I make no such ruling, since no new argument was made.